Our next case is number 20 13722 Mercer versus Alabama Department of Transportation. Please the court. This is Barbara Wells on behalf of the appellant, the Alabama Department of Transportation I'm joined with my co counsel in making the arguments presented in our briefs those co counselor, Mr. Brookshire Mr. Patty, Mr. Byrne, and Ms. Williams. Today this case presents three issues to the court and they are somewhat inextricably intertwined. One has to do with the district courts failure to follow the applicable legal test and deciding whether or not fees were appropriate in a mixed motive case in which the same decision defense was the finding of the jury in relieving L dot from liability for damages and the exposure to certain injunctive relief such as reinstatement. The next has to do with the denial by the district court of the motions that the L dot filed for judgment as a matter of law and the absence of any evidence that the decision maker considered race and making the decision challenged, relating to Mr The third issue has to do with the admissibility of certain evidence that the district court allowed that went to a purported comparator named Shannon golden. Mr. Golden's conduct did not rise to the level of an appropriate comparator under the test applicable when the district court decided the summary judgment motion and the district court found that to be the case. Council, I'll start with the comparator issue because it sort of feeds into a lot of what follows, especially with regard to the judgment. Notwithstanding or judgment as a matter of law. Once you get past summary judgment, once we get past a McDonnell Douglas, the ultimate question for the jury in this case was whether race was a motivating factor correct. Yes, sir. Why is it not relevant. And on the sliding scale of relevance we can we can dispute, but at least not relevant that someone who has similar characteristics, although doesn't meet the standard of a comparator under Lewis was treated differently. How is that not a relevant, a relevant fact. And let me just add to before you answer let me just add, haven't we said that it is even worse, a comparator doesn't meet the test for McDonald Douglas purposes, part of the convince that the title of the convincing mosaic, as we've called it, that can be considered. Thank you, Your Honor, but actually I'm not familiar with the case that you are referencing that shows the 11th Circuit or any panel of the 11th Circuit using as a tile in a convincing mosaic rejected comparator evidence that doesn't rise to the level of sufficiency for the McDonald Douglas burden shifting approach. Obviously the district court here, apply the whole point of the convincing mosaic that you can't meet McDonald Douglas or don't, but that there is other evidence out there, which suggests, or at least creates an issue of material fact on the causation element right yes yes your honor that's true but it's never been that we use stuff that doesn't rise to the level of a comparator. And that didn't meet that test and I would refer your honor to the core co AR decision cited I didn't I just I didn't understand that I thought that the comparator analysis was one kind of analysis and convincing mosaic was a separate kind of analysis. I think either are usable to establish a prima facie case, either the McDonald Douglas, or the convincing mosaic the question here was, did the district court improperly uses a tile in the mosaic evidence that he knew to not establish Aristotelian similarity their danger to the confusion of the jury by off where is there, where is there a requirement of Aristotelian similarity I even Lewis didn't say that but but Lewis, the answer to your question I think is what case says that doesn't Lewis say that even if they don't meet the comparator standard quote evidence of their treatment being the meaning the difference of treatment is not irrelevant. In other words, it still meets a relevancy standard under the convincing mosaic, even though it doesn't mean I'll check all the four boxes. That's there for a comparator. I mean, let me put it, let me ask it this way. Once you get to trial, you're governed by 401 right the relevancy standard for one of four or two. How is it not more likely to establish a fact that someone who is very similar to you, although does not meet all of the requirements that we've set out in Lewis is treated differently, not relevant to how you're treated. Well, first, does that not make it more likely than not, that you were treated differently than that person. Not when 403 comes into play and we're dealing with confusing the job so that gets to 403 okay so and that was our argument in the motion and lemonade. Okay. Cite me a case where we were reversed on relevancy grounds excluded evident where trial judge denies a 403. So it's rather defines evidence to be relevant and and and chooses not to exclude within their discretion of 403. I've not been able to find such a case, and nor have I been able to find a case where in this circuit, something like what the district court here did with respect to failed comparator evidence and I encourage you to look at our chart on page 55 of our principal brief to show that these two gentlemen were not similarly situated in any relevant so I promise you I've seen your chart as I've seen as I've seen your opposing councils distinguishing of that chart showing how they had the same ultimate supervisor that and both at least at a high level, dealt with allegations of misrepresentation and fraud in what they committed so I have seen that but I disagree your honor just to say that the ultimate decision maker was not in council, let's move past this for a moment for the moment that that I don't agree with you and I think it's relevant evidence. So, what we have then is evidence of golden, who is at least somewhat similar, and was treated differently in terms of the discipline that was given, we have evidence of prior bad acts by Davis, someone who was in the chain of the decision maker here, and I won't go through them but we all know what they are. We have that plaintiff was top rated at least before all this happened. We have that his African American supervisor was not informed of the investigation into him although everyone else in the supervisory chain was and wasn't sought input, and we have his testimony, which, at least at this stage we take to be true because it's consistent with the jury's verdict that he didn't do the things that were alleged to have been done. How is that collectively not enough to show that race was at least a motivating factor. Your Honor, he also admitted the significant misconduct which justified the dismissal at various points during the trial. He admitted it, although he had previously denied it, did he do not during his testimony did he not deny that he or did he say that he did in fact do every inspection that he said was done. I'm sorry I didn't follow the way that I apologize. That's, that's an unclear question. Did he not testify that I inspected everything where I fill out a form that said I did the inspection. But he also test I'm asking you if he gave that testimony. Yes, but he also admitted that there were there were forms completed on days when he was not inspecting plan, and he also did he also testify that he did in fact test everything that he said he tested. No, he admitted that there were tests done in his absence. Right, but they were done by people who weren't certified or sufficiently skilled to do them. And he also testified that he had permission from a supervisor to do that correct. He did testify to that yes. I'm just, if he gave testimony that that contradicts, despite the overwhelming evidence on the other side, isn't a jury entitled to believe that the reasons that were given are false reasons. Thank you. I think that, to go back to something you put in the pile earlier that I'd like to address the Davis evidence is particularly disturbing here because Davis isn't the ultimate decision right but he's in the decision. And there's no there's no council council, he's in the decision making chain, and he's the one who referred to Cooper to Mr. Cooper, the, the ultimate recommendation to go forward with termination right and had counsel for Mr Mercer asserted a cat's paw evidence of Mr Davis, and all I'm asking is in adding up all of these facts is it not enough to say that there was a sufficient evidence for the jury to find a motivating factor, based on the fact that Mr Davis treated his African American supervisor differently than he treated all the white supervisors. I'll stipulate to that if I can get for the purpose of my two minutes left to my principal argument to the argument that requires this court to reverse and render on the fee issue which is really what the court should focus on. If you will allow it your honor my down to less than two minutes. Go ahead. Thank you. So, here we have a case where the district court clearly applied 10th circuit law, with a presumption that the 11th circuit and binding precedent has rejected the district court did not apply the tests as the 11th circuit and every There's no discussion of the mountain of evidence of the plaintiff's misconduct in this case, there's no discussion of the paucity, albeit, perhaps the court sees that issue differently about how much evidence there is of race discrimination with respect to this particular disseminate this decision. This is not a case where there was any injunctive relief that was appropriate the injunctive relief that the plaintiff pursued below would not have changed anything about the workforce, or the relationship when you when you analyze all of the relevant factors under cannot, and the cases like it, except for good and cough from the 10th circuit which is out on an island, this is not a case in which attorneys fees were appropriate. The attorneys fee award in this case sets the unfortunate precedent as a matter of policy of creating a situation where the attorney has more to gain from the fee award argument, then the employee in a case where the defendant is clearly found to have appropriately because of employee misconduct. And at this point, I thank you, Your Honor for letting me get that two minutes and just prior Is it okay if I ask a couple questions, you may. Thank you, counsel, show me where in the order I have it in front of me where the court uses the term presumption. When he's when he quotes good and cough and says that for me to have meaning. So my question was very specific. Can you show me where he used the word presumption, I'm so sorry he did not use the word. Show me how many times you use the word discretion, or may I cannot count those quickly enough to have any time left for my rebuttal but I will concede he used those words. Okay. Did he also not say the evidence here was substantial. It was, I'm sorry that that that the jury found a substantial motivating factor, which that very sentence Your Honor is one I would point you to because if you look at the form that the verdict signed substantial is not in that question. I understand but you have his part of his job under under come up is to evaluate the evidence. Did he not do that. But there, there is no discussion of the evidence, and there is a misrepresentation of what the jury found that sentence is, he says he says I sat through the trial, I sat there days of trial. I've written he's now written number of orders on regard to this case, he says, my view is the evidence is substantial. We may disagree with that, but we can't say that he didn't analyze the very factor that kind of told him to analyze can we, we can say that when there's no discussion of the facts that go to those factors, whereas where did kind of say to analyze the amount of evidence in support. I don't see that as one of the factors that says to consider the proportionality test that is adopted from the shepherd case has to do with considering both the severity of the wrongdoing, and also whether it's an innocent plaintiff. Right, so if, if motivating factor is substantial, that goes to the severity of the wrongdoing as opposed to if it was a minimal fact and a minimal basis for firing right, your honor, I agree with you that the judge could have said, I found the evidence of that to be substantial. What he said instead was the jury found and the jury didn't find substantial, it found a motivating force. That's what the verdict form says, let me thank you very much. I have a question on this, which is, so you started by saying that if we, if we disagree with you, I'm sorry if we, if we agree with you on the attorneys fees issue that we would reverse and render on that. Why wouldn't the better thing to do on that would be to just vacate agreement and so the district court could apply the appropriate test. It certainly is within your purview to do that I submit that when you have the factual detailed factual analysis that Judge Gray Borden did when he was asked to do a report and recommendation. He applied the test concluded that under the can up standards, there should be no fee you have what you need to reverse and render and spare Judge Proctor, another written opinion and what has been a very heavily litigated case. Thank you as well because you are answering the court's questions will afford you your full three minutes for rebuttal. Thank you, Your Honor, counsel for Mr Mercer, Mr Clemon you may may begin when you're ready. May please record I'm UW Clemon. As the court knows, when the district court has acted on a request for attorney's fees in a mixed motive case. The question is whether it has abused its discretion. That discretion is very broad. And, and, and nobody really questions the latitude of a judge's discretion in that regard. L dot L dot doesn't. As it can't question that discretion. But what it says is that the court applied the wrong legal stand. Now, let's first talk about the right legal standard, and that's can look and can look says two things. You have to look at plaintiff's degree of success in obtaining declaratory injunctive relief. And secondly, the facts of the case degree of success facts of the case. In, in handing down cannot. Our circuit relied heavily on Jr. Judge J Harvey Wilkinson fourth circuit decision. The shepherd key. Now, I'm looking up. Neither the degree of success, nor the facts of the case is dependent on the other. Put another way the degree of success is not the be all and end all of the judges analysis under canoe. The ending may be quite different from the starting. The district judge has been mindful of and obedient to the conduct standard from the time that this case became a mixed motive case through the issuance of his decision in the case, he referenced it in his first order. Distinguish it. Distinguish it from gluten car. In referring the case of the magistrate. He directed the magistrate to be guided by canoe. He gave deference to it again in his order awarding fees. L dots misapprehension arises out of its misunderstanding of canoe. If you look at its main brief. It says that the second prong of canoe is widespread or intolerable racial animus or unacceptable employee conduct. You look at his reply brief, it says that is the relative culpability of the plaintiff's conduct, if any, and the severity of the defendant's conduct. To be sure, both of these factors should be considered, but they are not the second prong of canoe. The second prong is the facts of the case. Now, if there any doubt about it. Oh, yeah, let me let me let me ask you to address this because I think that's a, that's a great point. What, what do you see as the facts of the case, this particular case that warranted attorneys fees. And where do you see the district court, talking about those facts in its order. Yeah, I'm glad you asked that question. The, the, the court, analyze the relative culpability of Mercer and L dot. When it adopted the findings of the magistrate judge, and the magistrate judge concluded that there was evidence of wrongdoing on both sides. But the uncontradicted fact is that it was L dot own wrongdoing that led to seven incorrect or falsified records out of more than 180 days of those reports. Mercer, the supervisor of the department had a man who was who did nothing but inspect plants in August of 2011. That inspector high tower left the department. Instead of having three employees. Mercer had only one. And that one couldn't inspect plan. And so Mercer was saddled. In addition to all of his other responsibilities with the responsibility of making plan inspections. L dot knew that the department was overstaffed. It consistently ignore the constant requests of versus direct supervisor to staff the department. And it was only after it fired. It acknowledged its deficiency, because it then suspended the employee, Brian Davis, who should have properly staff the department. In addition to the culpability issue. The court looked these unique factual considerations. First, in this case, a public employer, the road and bridge building arm of the state of Alabama. A black supervisor for conduct much less serious than that of a white supervisor. You say, when you say the court looked at that, I just don't see that in the in Judge Proctor's decision. You're talking about Judge Borden's decision, the magistrate judges decision. Yes, sir. In the in the report and recommendation of the magistrate judge, he recites the evidence that we say justify the relief that we saw. And I'm fairly sure that in that in that recitation, he recited the undisputed factors I put forward that the, the department had not disciplined the white supervisor for more serious than that engaged in by by mercy. That white supervisor was suspended for 30 days rather than discharge, where he had converted state property to his own use, use state employees for his own benefit. Violating the state ethics law and on his face serious felonies because intentional violation of the ethics law carries with it a a punishment of up to 10 years in jail as best I recall. The second unique circumstance is that the black supervisor received no personal benefit from his misconduct. The white supervisor, most assuredly did. Third, the EEOC charged with enforcing Title VII found reasonable cause to believe that this state agency had violated that statute. That remarkable finding is part of the record in this case. First, and this gets back to something that's been discussed earlier, the district judge found that Mercer's race was not simply a motivating factor in our decision. It was based on his observations at trial. It was a substantial motivating fact. Finally, injunctive relief was denied on the country's license replication of Mercer, simply because Mercer was no longer employed by ELDA. But there's no question, but that the license of the white supervisor, who admittedly falsified records, was left intact. No question, but that Mercer is and for the rest of his mortal life will be precluded from working on any private contractor in Alabama who has a contract with ELDA. This sort of Damocles will be over his head for the rest of his life. These were the unique facts that the judge had before him and looked at. So what about the degree of success obtained by the plaintiff? I mean, it seems like that's another thing, and that when I look through Judge Proctor's order, I don't see any consideration of the fact that he was not going to grant an injunction, not going to give any meaningful relief to the plaintiff in the case. What do you say about that? Yes, sir. Judge Proctor adopted the magistrate judge's report and recommendation. And in the magistrate judge's report and recommendation, he makes findings on the relative culpability. And he concludes that there was wrongdoing on both sides. And I guess I guess that's what I'm having trouble with. So, I mean, I read the magistrate judge's report. The magistrate judge's report clearly applies, goes through the factors, explains how at the end of the case, you know, attorney's fees are not warranted here. Then Judge Proctor reverses the magistrate judge. He adopts parts of the magistrate judge's order, but otherwise disagree with him. He seems to only cite the Tenth Circuit case as the basis for disagreeing with the magistrate judge. I don't see anywhere in Judge Proctor's order where he says that the magistrate judge got the application of the conduct back wrong. It just seems like he's saying that he is going to follow the Tenth Circuit. That's just the way it is. Well, quite to the contrary, he says he adopts the magistrate judge's findings with respect to degree of success. Right, but there is not, right? There's very little degree of success. There's no success whatsoever. That's a given. And that's why I made it clear that when looking at the two Canoop factors, you don't have to have success in order to get relief. Absolutely. That's what Judge Proctor said. Right. I completely agree with you there. You don't have to have success to get relief, but that is one of the factors that we suggested you consider. Yes, sir. You would also consider the respective culpability of the parties, and the magistrate judge said they're equally culpable. So I'm trying to find a factor that some judge considered that weighs in favor of giving the attorney's fees as opposed to against the attorney's fees. Yes, Your Honor. Culpability of the party is one of the considerations under the facts of the case, but it's not the only one. The serving of the public interest, that's a factor that may be considered. And Judge Wilkinson said so in the main case. And if Judge Proctor had simply said, instead of what he did say, if he had said, this court exercises its discretion to approve an award of attorney's fees and costs because the public purpose served by resolving the dispute justifies the recovery of a fee. That would have covered him completely. It was a mistake for him to cite Guttenkopf for that language, because that same language is in a Fifth Circuit case, is in a Ninth Circuit case, is in a Seventh Circuit case, all of which are cited in my brief. So it was unfortunate that the judge chose Guttenkopf rather than Shepard or Garcia or Norco, the language in any of those cases. But it does not detract from the fact that he actually considered, after having quoted Guttenkopf, which is presumptive, that should have been the end of it. But after he quoted it, he immediately went on to say that he's basing his decision on facts unique to this case. Your Honor, the judgment of the court, we believe, is amply supported by the record. We believe that the mistake of the judge in citing Guttenkopf, even though it didn't cite the presumptive language of Guttenkopf, we believe that even so, under the clear facts of this case, the judge considered both prongs of Canute and exercised his discretion to grant an attorney's fee. Thank you, sir. Ms. Wells, you may begin your rebuttal. You're muted. I'm very bad at Zoom. I'm very sorry. Thank you for telling me. Your Honor, thank you for allowing me my three minutes of rebuttal. I think it's important here to realize that we have an instance where the magistrate judge's report and recommendation, which included both factual analysis and findings and legal analysis was specifically adopted with respect to the injunctive and declaratory relief and that portion was not appealed. Additionally, the court, instead of saying one way or the other, the district court didn't actually tell us if he was adopting or rejecting the factual analysis to the extent that the magistrate judge recommends an award of attorney's fees and costs being dependent on a declared awarded declaratory injunctive relief or a finding of defendants discrimination being blatant or egregious. That's what the court rejected. The district court read Magistrate Judge Borden's analysis of the Canute standards as requiring that and rejected that. So to the extent that Magistrate Judge Borden correctly summarized language that is in this court's binding precedent, that is where the district court judge began to go awry. And while he sets out the test that is Canute in his own articulation, if you'll see, this is on page four of the district court's decision, he discusses one, the degree of success obtained by the plaintiff, two, the facts of the given case. Well, that's a key place where he could have said that the facts that inform that are the relative strength of evidence of the employee's misconduct motivating the decision or the employer's discrimination. It's not just any facts in the case. It's those particular ones which he has not discussed anywhere here and then he ends up with the third factor being the severity of the wrongdoing, which I would submit in Canute probably is part of the facts of the given case. So he does acknowledge that there's supposed to be, you know, that there are differences that drive the use of the discretion. And were this the correct application of Canute, I agree, all we would have is abuse of discretion, but because he got the test wrong here and fell into the misreading of the precedent and the policy that Goodencoff exemplifies and the cases that come after that make it really clear how Goodencoff got that wrong, cases from other circuit courts of appeals. The problem is when you get to saying, for the word may to have meaning you have to have a fee. Well, they have discretion to award a fee but not automatically award a fee when there's not evidence under the test. Thank you, counsel. Sorry, court will be adjourned until 9am Central tomorrow morning. Thank you, Your Honor. Thank you.